[Criminal No. 123.   Filed February 23, 1898.]

[52 Pac. 358.]

CHARLES HACKETT, Defendant and Appellant, v. TER-
    RITORY OF ARIZONA, Plaintiff and Respondent.

1. APPEAL AND ERROR—REVIEW—CONFLICT OF EVIDENCE—CRIMINAL LAW
    —ASSAULT WITH INTENT TO COMMIT MURDER—DEFENSE—VOLUN-
    TARY DRUNKENNESS—INSTRUCTIONS.—Where the defense to a prose-
    cution for assault with intent to commit murder is voluntary
    drunkenness, and the jury, being correctly instructed that such
    drunkenness, if proved, may be considered for the purpose of deter-
    mining whether the accused at the time of the alleged offense
    was capable of forming the specific intent necessary to constitute
    the crime, has found the defendant guilty, this court will not weigh
    conflicting evidence as to his condition nor interfere with the verdict
    where there is evidence to support it.

APPEAL from a judgment of the District Court of the Fourth Judicial District in and for the County of Coconino. R. E. Sloan, Judge. Affirmed.

The facts are stated in the opinion.

E. E. Ellinwood, for Appellant.

C. M. Frazier, Attorney-General, for Respondent.

DOAN, J.—The record in this case shows that the appel-
lant, Charles Hackett, was indicted on the fifth day of Au-

gust, 1897, in the county of Coconino, territory of Arizona, for an assault with intent to murder one John Giblin, to which indictment he pleaded not guilty; that on the sixth day of August trial was had by jury, and on the seventh day of August a verdict of guilty was rendered. The appellant makes one assignment of error in the proceedings below,— namely, "That the verdict is contrary to the law and the evidence,"—and, having filed a transcript of the proceedings in the lower court, and of all the evidence taken upon the trial, presents the same to this court for its consideration. The evidence was unanimous to the effect that the appellant (Hackett) assaulted a drunken man, who was too drunk to make any resistance; that Giblin, a stranger, who was at the time unarmed, and happened to be passing by, approached, and told appellant "not to strike him; he was drunk," etc., whereupon appellant drew a knife from his pocket, and plunged it into Giblin's body, inflicting a wound in his side penetrating the walls of the chest. Giblin had the wound sewed up by a surgeon, and recovered. The direct testimony of all the witnesses to the affair fully supported these facts, gave the circumstances in detail, and was absolutely uncontradicted. There was no question or conflict of evidence in regard to the fact or circumstances of the stabbing of Giblin by the appellant, nor in regard to the nature of the wound inflicted. The only variance in the testimony was in regard to the condition of appellant at the time of the assault. In regard to this, one witness testified that he "was sober," and another that "he was drinking a little." These were eye-witnesses of the transaction. Their testimony was practically identical as to the other features and circumstances of the case. They testified, as quoted, in reply to the direct question propounded by counsel for defendant, as to the condition of Hackett at the time. This was all the testimony adduced as to Hackett's intoxication at the time he made the assault. Another witness of the cutting, whose testimony corroborated these in other particulars, was not asked, and did not testify, as to the condition of Hackett. A witness who arrived after the cutting, and to whom Hackett gave the knife used on the occasion, testified that "he was drunk, very drunk." This testimony, however, only goes to his condition at time of delivering the knife, and can only be inferentially attached to

the former time when the assault was made. Hackett was a witness in his own behalf, but only said on this point that he had "been drinking all day," and in reply to the question, "How much had you been drinking?" answered, "I don't know how much I was drinking; I was drinking all day"; and in reply to "How this came up—this cutting?" his reply was, "I have a slight remembrance of having a racket with some one; I don't know who it was." After all the evidence was in, the court instructed the jury: "You will observe that the gist of this offense is the intent, and the specific intent is that to commit the crime of murder as defined by our statute. . . . The intent with which an act is done is to be inferred from all the facts and circumstances attending its commission. . . . That the defendant, at the time charged, bore malice toward Giblin or another, is not sufficient under this indictment, but there must exist the premeditated specific intent to murder said Giblin. . . . It is incumbent upon the territory to prove beyond a reasonable doubt all the material allegations of the indictment, among which, in this case, is that the defendant made the alleged assault with a specific and premeditated intent to commit murder. The rule that the burden of proving justification, excuse, and mitigating circumstances shifts to the defendant has no application to the trial of an assault to commit murder, but the burden at all times rests on the prosecution. . . . While it is a general rule of law that voluntary drunkenness is no excuse for a crime perpetrated under its influence, still, in cases of this kind, drunkenness, if proved, may be considered by the jury for the purpose of determining whether the accused at the time of the alleged offense was capable of forming a willful, deliberate, and premeditated design to commit murder; and in this case, although the jury may believe from the evidence beyond a reasonable doubt that the defendant assaulted the said John Giblin in the manner and form as charged, still, if you further believe from the evidence that before and at the time the defendant struck the blow he was so deeply intoxicated by spirituous liquors as to be incapable of forming in his mind a design deliberately and premeditatedly to commit the crime of murder under such intoxication, then the defendant cannot be found guilty of the crime of an assault with intent to commit murder." This question of intent is

a question of fact for the jury to determine. They have determined it. Their verdict of "guilty as charged," after hearing the evidence, and considering the same under the instructions of the court, which clearly and correctly state the law, and which were not only definite and explicit, but were decidedly full and fair to the defendant on this point, shows conclusively that in the minds of the jury the facts showing the intent were fully established by the evidence, and that the testimony tending to show the drunkenness of the defendant at the time he committed the offense was not sufficient to raise in the minds of the jury a reasonable doubt of either his ability to form, or the fact that he did form, such intent at the time he struck the blow. It is a principle of law too well settled to necessitate the citation of authorities that an appellate court will not weigh the evidence in a case, or decide upon the preponderance of evidence, where there has been conflicting evidence decided upon by a jury, nor interfere in cases where there has been a verdict rendered with material evidence tending to support it. In this instance the record shows that the evidence was presented fairly on this point. The instructions asked by and given for the defendant recognized the existence of, and were based upon the importance of, such evidence. The jury heard the testimony, saw the bearing and demeanor of the witnesses who gave it, had their attention directed by the court to the importance of this feature of the case, were qualified to judge of the relative weight and merit of all of the evidence. After long and mature deliberation, they decided upon it, and their verdict will not be disturbed by this court. Judgment of lower court affirmed.

Street, C. J., Davis, J., and Sloan, J., concur.