STATE OF IOWA, Appellee, v. THOMAS BEBB, Appellant.

**Rape:** COMPLAINT OF PROSECUTRIX. On a prosecution for rape, evi-
1  dence that prosecutrix made complaint is admissible as affecting her credibility as a witness.

**Same.** Delay in making complaint of an alleged outrage does not
2  ordinarily render evidence thereof inadmissible, but goes to the weight to be given the same by the jury.

**What constitutes a complaint.** An involuntary statement of prose-
3  cutrix made in response to an inquiry concerning her condition, is not a complaint and is inadmissible as such.

**Res gestæ.** Statements of defendant made at the time of the alleged
4  rape concerning his illicit relations with another, were admissible as part of the *res gestæ*.

**Intercourse with others.** On a prosecution for rape, it appearing to
5  the jury that prosecutrix was pregnant, defendant should be allowed to cross-examine her as to her intercourse with others for the purpose of counteracting any sympathy by reason of her condition.

*Appeal from Mascatine District Court.* —HON. A. J. HOUSE, Judge.

THURSDAY, OCTOBER 27, 1904.

PROSECUTION for rape, committed, as alleged, upon a female child under the age of 15 years. There was a verdict of guilty as charged, and judgment on the verdict. Defendant appeals.— *Reversed.*

*Clymer A. Coldren* and *Jayne & Hoffman,* for appellant.

*Charles W. Mullan,* Attorney General, and *C. A. Van Vleck,* Assistant Attorney General for the State.

BISHOP, J.— The prosecutrix, being called as a witness for the State, testified that she was twelve years of age at the time of the assault alleged; that the crime was committed about September 1, 1901, and on the Bebb farm, where she was living with her parents — the latter being in the employ of the father of the defendant on such farm. Among other things, the prosecutrix was asked if she had made complaint to any one of the assault alleged to have been made upon her by defendant. To this the defendant interposed the general objection that the evidence sought to be elicited was incompetent and immaterial. The objection was overruled, and, we think, properly so. In cases of this kind, evidence that subsequent to the commission of the alleged offense complaint thereof was in fact made, while trenching upon general rules, has been held generally to be admissible. It is not considered that the fact of complaint forms a part of the *res gestæ;* on the contrary, the exception is allowed upon the theory that proof of the fact is proper to be considered as affecting the credibility of the prosecutrix as a witness; on the one hand tending to corroboration when the fact of complaint is made to appear, and on the other hand to the discredit of her evidence in the event no complaint is shown to have been made. *State v. Wolf,* 118 Iowa, 564; *State v. Peterson,* 110 Iowa, 647; *State v. Mulkern,* 85 Me. 106 (26 Atl. Rep. 1017); *State v. Niles,* 47 Vt. 82.

1. COMPLAINT OF PROSECUTRIX.

II. Counsel argue, however, that the complaint said to have been made was too remote, and for that reason was not entitled to any consideration. Conceding that defendant is in position to present the question in view of the record, the argument is not sound. We do not say that a complaint may not be so long delayed as to rob it of all force, and hence warrant a refusal to receive it in evidence. But that delay is fatal to the admissibility of the evidence is not true of necessity. Ordinarily, the fact of delay goes to the weight of the evidence only,

2. SAME.

and is, therefore, a subject of consideration for the jury. The reason for the exception is not difficult of ascertainment. The law takes note that within common experience, when an outrage of the character here in question has been committed, the instincts and emotions of womanly nature will prompt an outcry against the wrong committed and the perpetrator thereof, not only as an expression of grief, indignation, or resentment, but as calling for sympathy and assistance. Further, the law recognizes that in some instances it is possible that through timidity or fear a wronged woman may fail to make prompt disclosure. The law indulges, therefore, in the generous supposition that in the ordinary course of things a woman thus wronged will complain thereof as soon as opportunity offers, or at least when no longer controlled by conditions of restraint in character, as above referred to. *State v. Cross,* 12 Iowa, 66; *Stevens v. People,* 158 Ill. 121 (41 N. E. Rep. 856); *Parker v. State,* 67 Md. 329 (10 Atl. Rep. 219, 1 Am. St. Rep. 387). Accordingly the operation of the exception has been extended so far as to permit the introduction in evidence by the State of the fact that a complaint in character as indicated has been made; in other words, and to be exact, that, inspired by confidence in friends or others believed by her to be capable of sympathy and assistance, the woman had been prompted by her emotions, or her sense of wrong and indignation, to make revelation of the fact of the outrage committed upon her, and that, all circumstances considered, this was done within a reasonable time. The defendant may point out, therefore, the time when and the circumstances under which the same was made as affecting the value thereof for corroborative purposes. On the other hand, the State may introduce evidence to show why the complaint was not sooner made. *State v. Tomlinson,* 11 Iowa, 401; *State v. Cross,* 12 Iowa, 66; *State v. Snider,* 119 Iowa, 15.

III. No motion was made to strike out the evidence

introduced in proof of complaint, but, after instructing the
jury as to the necessity for corroboration, the court pro-
ceeded to say, in effect, that if complaint was
made as testified to by the prosecutrix and her
aunt, and in the light of circumstances shown
such complaint was made within a reasonable time, the
fact of such complaint might be considered by the
jury as evidence tending to corroboration. Exception was
taken to the instruction thus given, and as applied to the
case made, we think it involves error. The court evidently
regarded the evidence, if believed by the jury, to be sufficient
to make out a case of complaint, and it is in this view that
we disagree with the learned trial court. We set out the
testimony upon the subject in full. In answer to the inter-
rogatory propounded to her, the prosecutrix said: " I told
my aunt, Hattie Gelatt, Christmas evening, while com-
ing from town." On cross-examination she testified:
" I told no one until Christmas eve. When my
aunt asked me, I told her. Did not tell her of my own free
will. * * * The Monday before Christmas met him
[defendant] on the road. I was then living * * *
seven or eight miles from Bebb's. He asked me if I had
been unwell since the time he was with me, and I said ' No,'
and he asked me if mamma knew it, and I said, ' Yes.'
* * * My mother knew I hadn't been unwell. I told
her before we left Bebb's. Made no complaint to her about
Tom Bebb. She did not ask me. * * * Never com-
plained to anybody that I was in the family way before I
told my aunt." Mrs. Gelatt, when subsequently called as a
witness for the State, testified without objection that the
prosecutrix came to live with her in November, 1901, and,
further: " She made complaint to me about Christmas eve.
She did not complain to me voluntarily." Such is the
testimony in full.

Now, by the expression, " to make complaint," as used
in connection with cases of this character. is meant nothing.

more than to make disclosure of the pain, grief, indignation, mortification, or resentment directly occasioned by the outrage. Clearly enough, it does not include a complaint in the technical sense of an accusation intended to be made the basis of proceedings designed to punish the offender. Applied to such, the reason and spirit of the exception is wholly wanting. It is equally apparent that a statement made by the testatrix long after the alleged assault, not voluntary in character, but, on the contrary, responsive merely to the demands of relatives or friends for information respecting her condition — for instance, as to pregnancy — and as to the author of such condition, is not within the spirit, and therefore not within the meaning, of the expression as used. The facts disclosed by the record before us are such as to make it clear to our minds that in the restricted legal sense contemplated by the exception no complaint was made by the prosecutrix. It will be observed that nothing was said between her and her mother, save as to the matter of her failure to menstruate properly. The statement made to her aunt, four months after the occurrence of the assault, was not a voluntary one, and it must be manifest that it was made in response to a demand for explanation as to her condition respecting her failure to menstruate and pregnancy. It was an explanation, therefore, and not a complaint any more than was her statement made to the grand jury upon which the indictment against the defendant was predicated. It follows not only that the instruction should not have been given, but the jury should have been told to disregard the evidence introduced upon the subject.

IV. As the case must be remanded for a new trial, we think it proper to notice two other matters of complaint insisted upon by defendant. Complaint is made of the admission of the testimony of prosecutrix as to something said to her by defendant at the time of the commission of the alleged crime with reference to his having had illicit relations with another woman. But it

4. RES GESTAE.

appears that such statements of defendant, if made, were at the very time of the commission of the crime, and they were clearly admissible as a part of the res gestæ. They were a part of the very transaction in question, and the testimony was properly admitted.

V.   On cross-examination of the prosecutrix the attorney for the defendant repeatedly asked her if she had not had sexual intercourse with other men than the defendant 5. INTERCOURSE prior to the act of the defendant complained of. WITH OTHERS. The court ruled out these questions on the ground that it was immaterial with reference to defendant's liability whether prosecutrix had previously had connection with other men or not, and this ruling was sound on general principles. But it is now argued that, inasmuch as it was apparent to the jury, and fully conceded on both sides, that prosecutrix was pregnant at the time of the trial, defendant should have been allowed to show that this condition may have been the result of intercourse with other men than the defendant, for the purpose of counteracting any sympathy with the prosecutrix which might have been aroused by reason of her condition. In this view, and limited to such purpose, we think the evidence offered was proper, and an answer to the question should have been allowed.

For the reasons pointed out in the third subdivision of this opinion, the judgment must be reversed, and the case remanded for a new trial.— *Reversed.*